**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **RUTLEDGE INVESTMENTS, LLC,** | * | **CIVIL ACTION NO. 2:21-CV-00364** |
| *Plaintiff,* | * | |
| | * | **JUDGE JAMES D. CAIN, JR.** |
| | * | |
| **VERSUS** | * | **MAGISTRATE JUDGE KAY** |
| | * | |
| **SCOTTSDALE INSURANCE COMPANY** | * | |
| *Defendant* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN OPPOSITION TO MOTION FOR**
**SUMMARY JUDGMENT RELATIVE TO LA. R.S. 22:1892**

Complainant, Rutledge Investments, LLC, owns a commercial building located in Lake Charles, Louisiana. Defendant, Scottsdale Insurance Company, provided wind and hail insurance covering that building. On August 27, 2020, Hurricane Laura struck the Lake Charles area, extensively damaging the building owned by complainant and insured by defendant. This litigation arises out of the first party insurance claim made by complainant against defendant.

In its petition, complainant seeks to recover as damages the amount due under the terms and conditions of the policy to pay for the damages caused to the building. In addition, complainant has brought a claim for penalties and attorney fees under both *La. R.S. 22:1973* and *La. R.S. 22:1982*. Defendant has filed a motion for summary judgment regarding the claim for penalties under *1973*, and a motion for summary judgment regarding the claim for penalties and attorney fees under *1892*.

This memorandum will address defendant's motion for summary judgment relative to penalties under *La. R.S. 22:1892*.

## I.  LA. R.S. 22:1892

*La. R.S. 22:1892(A)(1)* provides that insurers such as Scottdale in this case, "…shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest." Paragraph *(B)* goes on to provide that if the failure to pay the amount due is arbitrary, capricious or without probable cause, the insurer is liable for a penalty of 50% damages on the amount found to be due to the insured. If there has been a tender, the penalty is 50% of the difference between the amount tendered and the amount found to due. The statute goes on to provide that the insurer is also liable for reasonable attorney fees and costs.

Insurers such as Scottsdale have a duty to investigate claims submitted by their insureds.[1] The Louisiana Supreme Court has found that insurers have a duty to "investigate the claim thoroughly."[2] In *Kelly v. State Farm Fire & Cas. Co.*, 2014-1921, p. 17 (La. 5/5/15); 169 So.3d 328, 339, the Louisiana Supreme explained that the insurers duty to investigate is an "affirmative duty" requiring "positive action." In addition to a duty to thoroughly investigate the insured claim, the insurer has a duty to timely tender a "reasonable amount" in order to avoid penalties.[3]

---

[1] *McClendon v. Econ. Fire & Cas. Ins. Co.*, 98-1537, p. 9 (La.App. 3 Cir. 4/7/99); 732 So.2d 727, 732.

[2] *Smith v. Audubon Ins. Co.*, 95-2057, p. 9 (La. 9/5/96); 679 So.2d 372, 376.

[3] *McDill v. Utica Mut. Ins. Co.*, 475 So.2d 1085, 1091–92 (La.1985): "…the insurer must tender the reasonable amount which is due. This amount would be unconditionally tendered to the plaintiff not in settlement of the case, but to show their good faith in the matter and to comply with the duties imposed upon them under their contract of insurance with the insured. The amount that is due would be a figure over which reasonable minds could not differ."

## II.  ISSUES IN THIS CASE

There are numerous facts at issue in this case which a jury could, and probably will, resolve in favor of complainant, finding that the defendant breached its duties under *La. R.S. 22:1892*. For instance, defendant received the report of its "independent" adjuster on September 13, 2020. According to Scottsdale's records, the independent adjuster found the replacement cost value to be $244,178.93.[4] Rather than basing its tender on that amount, Scottsdale reduced its estimate of the replacement costs to $215,020.20.[5]

On October 5, 2020, defendant received a copy of the estimate of $518,415 prepared by complainant's contractor. That estimate was received prior to Scottsdale issuing its first tender amount of $175,513. On October 9, 2020, the adjuster informed Mr. Rutledge that there was a dispute as to the estimates, and that a structural engineer was being retained. That structural engineer, Jason Watson with Pronet, did not issue a report until December 9, 2020, some two months later. On December 18, 2020, the adjuster reviewed the engineering report and the information received from complainant's contractor and increased the estimate for replacement cost to $294,749.83.

After this litigation was filed, and in preparation for trial, Scottsdale had both its estimates and the estimate of complainant's contractor reviewed by an outside company, SED, Services. After reviewing the information, Micheal Carbo with SED Services, concluded that the reasonable value of the cost of repair is $362,046.97. This is a significant increase over the amount estimated by the adjuster, and on December 18, and an even larger increase over the initial estimate of $215, 020.20.

---

[4] Defendant's Exhibit "F," page SIC 2249.
[5] *Id.*, SIC 2247-2249.

### III.  AFFIDAVIT AND OPINIONS OF LOUIS FEY

Defendant has submitted an affidavit and report of Louis Fey, a self-proclaimed expert in insurance law and policy. Mr. Fey offers a number of opinions essentially attempting to restate the law in a way that favors Scottsdale, rendering the opinion that everything his client did was correct. Mr. Fey has attempted to present this type of testimony in other cases, with those attempts being rejected as improper.

In *SJB Grp., LLC v. TBE Grp., Inc.*, CIV.A. 12-181-SDD, 2013 WL 4499032, (M.D. La. Aug. 19, 2013),[6] the defendant insurer attempted to have Mr. Fey offer exactly the type of testimony he proports to offer in this case. The plaintiff filed a Daubert motion seeking to exclude his testimony arguing that his opinions draw impermissible legal conclusions, and rely upon his subjective beliefs. The Court granted the plaintiff's motion seeking to exclude or limit the testimony of defendant's "proposed expert," Louis Fey.

In *Collins v. Benton*, CV 18-7465, 2020 WL 4504401, (E.D. La. Aug. 5, 2020) the Court granted plaintiff's Daubert motion, finding that Mr. Fey could not provide legal conclusions. His testimony in that case was limited to what constitutes "red flags" in the insurance industry indicating that an accident was staged. Mr. Fey offers no such testimony in this case, rather he only offers testimony as to what the law requires and his opinion that Scottsdale acted reasonably in handing the claim.

In *Versai Mgmt. Corp. v. Landmark Am. Ins. Corp.*, CIV.A. 11-2139, 2013 WL 681902, at *3 (E.D. La. Feb. 22, 2013), the Court allowed Mr. Fey to testify as to industry standards

---

[6] In that case Mr. Fey was retained to provide testimony "on matters involving the standard practice and custom of the insurance industry" (*SJB Grp., LLC v. TBE Grp., Inc.*, at *2)  Likewise, in this case Mr. Fey proports to offer testimony "regarding insurance standards, customs, and practices." (Defendant's Exhibit "M," report page 2, item 1)

only because the case involved "facts that are far more complicated than a typical homeowner's insurance dispute." The Court specifically prohibited Mr. Fey from rendering legal conclusions that the defendant insurer acted in bad faith.

In **Schultz v. Gov't Employees' Ins. Co**., 1:15CV172-MW/GRJ, 2016 WL 8861701, at *1 (N.D. Fla. Aug. 12, 2016), the Court found that Mr. Fey's proposed testimony would not be helpful the jury on the issue of bad faith, and that many of his opinions were inadmissible. The Court described Mr. Fey's proposed testimony as follows:

> When the facade of improper opinion is stripped away, much of Mr. Fey's expert report is merely a summary of the facts in a light favorable to Plaintiff and argument about the significance of those facts. Many of his conclusions merely indicate that, based on facts to be proved at trial, Geico acted wrongly in some way. That does not "concern[ ] matters that are beyond the understanding of the average lay person," especially after this Court has instructed the jury on the applicable law. Such testimony would not be helpful to the jury. Nor would testimony that "offers nothing more than what lawyers for the parties can argue in closing arguments."[7] [*Citations omitted*]

In **GuideOne Mut. Ins. Co. v. Daniel**, 7:13-CV-126 (HL), 2015 WL 5190853, at *3 (M.D. Ga. Sept. 4, 2015), as in this case, Mr. Fey stated that he was not attempting to testify as to legal conclusions. The Court found that, despite his state to that effect, that was ultimately exactly what he was doing. While the Court found that there were some limited issues upon which he could testify, the would not allow him to testify in such a way as to usurp the role of the trier of fact.

---

[7] The Court went on to explain: "This is a bad faith case, where bad faith is determined based on the "totality of the circumstances." The jury is not being asked to decide whether a two-stitch cross met the industry standard of care even though four stitches would have been more prudent. It is being asked to decide, from a non-technical, lay perspective, whether an insurance company acted in "bad faith" with respect to a lay insured. Who better could decide the issue than a lay jury, unmolested by the legal conclusions—disguised as opinions—of a self-proclaimed 'expert'?" [*Citation omitted*]

Recently, in ***Eaux Holdings LLC v. Scottsdale Ins. Co.***, 2:20-CV-01582, 2021 WL 5991700, at *2 (W.D. La. Oct. 12, 2021) this Court has had the opportunity to consider whether to allow Mr. Fey's testimony. While this Court allowed Mr. Fey to present some limited testimony as to industry standards, it held that he would "...not be permitted to testify as to legal conclusions."

In this case, Mr. Fey sets forth the following industry standards in his report:

Claims representatives….are the people responsible for fulfilling the insurance company's promise.

Claim representatives handling first-party losses should promptly pay all amounts they know the insurer owes and should negotiate in a forthright, honest, and flexible manner over any amounts that are in dispute.

**An investigation must often be undertaken to fully develop the facts needed to determine coverage. Good faith claim practices require that this investigation be objective, thorough, and timely.** [*Emphasis in original*]

An insurer that fails to properly investigate, evaluate, negotiate, and settle third-party claims exposes its insured to excess verdicts and exposes itself to bad faith claims. [*Note, this is not a third-party claim, and thus, this standard has no application in this case*]

Claim representatives **should investigate in an unbiased way, pursuing all relevant evidence**, especially that which establishes the legitimacy of a claim. Claim representatives should avoid using leading questions that might slant the answers. In addition, they should work with service providers that are unbiased…**Investigations should seek to discover the facts and consider all sides of the story**. Claim representatives should not appear to be looking for a way out of the claim or for evidence to support only one side. [*Emphasis in original*]

He then goes on to list 43 "opinions" which have little to no relationship to the industry standards he list, are only statements of facts which require no expert testimony, are merely *ispe dixit* conclusions, or are statements and misstatements of the law.

For example, his first three "opinions" [listed as a through c] are merely restatements of facts to be established at trial. No expert opinion is needed for these, and there are not at issue in this trial. The next three "opinions" are merely his unsupported opinions of issues to be resolved, to the extent they are relevant, by the jury. There is nothing in the standards that he cites that touches on these subject matters, and even if they did, deciding things like whether communication was "prompt and thorough" is something that a jury can certainly decide without expert testimony.

The next three "opinions" are merely statements of law, some correct and others incorrect. He says that insurance companies do not owe anything until presented with evidence establishing the amount of loss. Actually, insurers have a duty to thoroughly investigate the claim and adjust the amount of damages and cost of repairs. His "opinion" is a misstatement or mischaracterization of the law. He says insurers are entitled to dispute claims if the dispute is reasonable. That will be in the jury charge and does not require expert testimony.

He says insures do not have to pay the undisputed amount until the claim is "fully investigated." That is not the law. If a reasonable person would conclude that an amount is undisputed, that amount has to be tendered. The investigation can continue, and additional amounts may be due as a reasonable adjustment to the undisputed amount. The whole point of tenders is to get the reasonable undisputed amount paid within the time limits set by the law. If no amount is due until the insurer determines it has "fully investigated" the claim, there will be no tenders.

7

Mr. Fey's "opinions" continue in this vein throughout his report and should not be allowed before the jury or considered when deciding this motion for summary judgment.[8] In this case, the issue is whether the tenders made by Scottsdale were timely and reasonable. There is no dispute as to when Scottsdale received satisfactory proof of loss, or when it received the information needed to estimate the costs of repairs. Many of his "opinions" are either not relevant to this litigation, or even if relevant in any fashion, their prejudicial effect outweigh any probative value.

Defendant, and Mr. Fey, take positions on a couple of other matters which are worthy of comment. They argue, or at least attempt to intimate, that because Rutledge Investment has only spent $156,696.54 on repairs, the insurer has no obligation to make an additional tender. That is not the law. As Mr. Rutledge explained in his deposition, when he hires a contractor he has to contract for the full costs, and he cannot do that without knowing that he will receive the fully owed insurance funds. How much he has spent of the amount tendered is irrelevant when determining whether the amount tendered was reasonable.

Defendant also argues that insureds have an obligation to obtain competitive bids before a tender is made. That is not the law. First, getting a single contractor after a major hurricane is a challenge, much less getting competitive bids. Second, whether the insured decides to get competitive bids, or even do some of the work themselves, is irrelevant to the insurers

---

[8] Recently in *Stewart v. Quality Carriers, Inc.*, CV 19-00606-BAJ-SDJ, 2021 WL 2708924, at *2 (M.D. La. June 30, 2021), the Court explained: "The Court has "broad discretion in ruling on the admissibility of expert testimony in the summary judgment context." For the purposes of summary judgment, an expert affidavit must include materials on which the expert based his opinion, as well as an indication of the reasoning process underlying the opinion." [Citations omitted] Mr. Fey's report should be excluded and not considered as it is improper and does also not meet this standard.

duty to thoroughly investigate the claim, and to pay the reasonable undisputed amount in a timely fashion.

### III.  SCHEDULED DEPOSITIONS

Complainant has only recently received the expert's reports submitted by defendant, and has not taken the deposition of the adjuster, or of these experts. The deposition of Scottsdale is currently scheduled for February 16, 2022, and the depositions of defendant's experts is scheduled for January 18 and 24, 2022.

### IV.  SUMMARY JUDGMENT STANDARD

As this Court recently noted in *Chevalier v. Circle K Stores, Inc*., 2:21-CV-01819, 2021 WL 6127416, at *1 (W.D. La. Dec. 28, 2021)

> A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. [*Citations omitted*]

Further, this is not the first motion for summary judgment this Honorable Court has considered arising out of Hurricanes Laura and Delta. It doubtless will not be the last.

In *Pentecostal Church of DeQuincy v. Church Mut. Ins. Co*, 2:19-CV-01656, 2021 WL 3926118, at *2 (W.D. La. Sept. 1, 2021), this Court considered a motion for summary judgment on penalties and attorney fees. In denying that motion, and finding that this is an issue to be determined by the jury, this Court noted:

> Louisiana courts have determined that "the arbitrary and capricious aspect of the bad-faith penalty inquiry requires a factual finding of the reasonableness of the dispute, i.e., a reasonable defense, as well as finding that the insurer acted in good faith in its reliance upon that reasonable defense." *Thibodeaux v. Arvie*, 226 So.3d 1229, 1235 (La.App. 3

9

Cir. 8/31/17), *writ denied*, 228 So.3d 1207 (La. 10/27/17); see also ***Sacks v. Allstate Propr. & Cas. Ins. Co.***, 2017 WL 4791179, at *4 (E.D. La. Oct. 24, 2017).[9]

The issue in this case is whether Scottsdale tendered a reasonable amount in its first tender and subsequent tenders, and whether those tenders were timely. There are material facts at issue in this matter which should be weighed and determined by the jury. If Scottsdale is found by the jury, after considering all of the evidence and making credibility determinations, that Scottsdale acted in an arbitrary and caprcious manner in that regard, penalties and attorney fees are due.

It is respectfully submitted that the motion for summary judgment filed by defendant, Scottsdale should be denied.

---

[9] ***Thibodeaux v. Arvie*** (supra) was a UM case, where the insurer argued that there was a reasonable dispute. The Louisiana Third Circuit approved the denial of the motion for summary judgment, noting that the bad faith determination requires a fact finding of reasonableness, and that this is a "fact-intensive inquiry herein is not ripe for resolution on summary judgment."

Willwoods Cmty. v. Essex Ins. Co., 09-651 (La.App. 5 Cir. 4/13/10); 33 So.3d 1102, writ denied, 2010-1338 (La. 10/15/10); 45 So.3d 1111

[HEADNOTE] Excess insurer failed to pay additional amounts owed insured for property damage cause by hurricane within thirty days of receipt of proof, as mandated by statutory provision that required such payment after receipt of satisfactory proofs of loss from the insured, even though parties were engaged in arbitration of claims, and appraisal process was ongoing, where excess insurer knew that amounts owed insured were substantially greater than what had been paid upon its receipt of appraiser's report, yet failed to pay additional amounts within 30 days of receipt of that information

Jacobs v. GEICO Indem. Co., 52,372, p. 9 (La.App. 2 Cir. 9/26/18); 256 So.3d 449, 456

To prevail under 22:1892(B)(1), the claimant must establish that the insurer received satisfactory proof of loss, failed to pay the claim within the applicable statutory period, and that the failure to timely tender a reasonable amount was arbitrary and capricious. Id. Satisfactory proof of loss within the meaning of the statute is that which is sufficient to fully apprise the insurer of the insured's claim. McDill v. Utica Mutual Ins. Co., 475 So.2d 1085 (La. 1985); Cooper, supra; Jones, supra.

Louisiana Bag Co., Inc. v. Audubon Indem. Co., 2008-0453 (La. 12/2/08); 999 So.2d 1104

Claims representative's discomfort at tendering larger advance payment for destruction of building and stock in fire was unjustified and without reasonable or probable cause or excuse and was insufficient to serve as a reasonable basis for delaying payment of the undisputed portions of the claim. LSA–R.S. 22:658.

Pentecostal Church of DeQuincy v. Church Mut. Ins. Co, 2:19-CV-01656, 2021 WL 3926118, at *2 (W.D. La. Sept. 1, 2021)

Louisiana courts have determined that "the arbitrary and capricious aspect of the bad-faith penalty inquiry requires a factual finding of the reasonableness of the dispute, i.e., a reasonable defense, as well as finding that the insurer acted in good faith in its reliance upon that reasonable defense." Thibodeaux v. Arvie, 226 So.3d 1229, 1235 (La.App. 3 Cir. 8/31/17), writ denied, 228 So.3d 1207 (La. 10/27/17); see also Sacks v. Allstate Propr. & Cas. Ins. Co., 2017 WL 4791179, at *4 (E.D. La. Oct. 24, 2017).

Whether Church Mutual acted in bad faith will be up to the jury to decide. Accordingly,

Big Bros./Big Sisters of Sw. Louisiana I v. Amguard Ins. Co., 2:21-CV-00092, 2021 WL 5181680, at *2 (W.D. La. Nov. 8, 2021)

Plaintiff maintains that because Amguard failed to pay any portion of the undisputed damages until, at a minimum, 104 days after receiving satisfactory proof of loss, Amguard failed to timely tender the undisputed portion of Plaintiff's damages which is a "per se" violation of Louisiana Revised Statutes 22:1892 and 22:1973.

| | |
|---|---|
| Line Item Total 195,241.15 | Line Item Total 171,738.30 |
| Material Sales Tax 8,241.24 | Material Sales Tax 7,445.16 |
| Subtotal 203,482.39 | Subtotal 179,183.46 |
| Overhead 20,348.27 | Overhead 17,918.37 |
| Profit 20,348.27 | Profit 17,918.37 |
| Replacement Cost Value $244,178.93 | Replacement Cost Value $215,020.20 |
| Less Depreciation (31,802.27) | Less Depreciation (23,997.55) |
| Actual Cash Value $212,376.66 | Actual Cash Value $191,022.65 |
| Less Deductible (10,508.00) | Less Deductible (10,508.84) |
| Net Claim $201,868.66 | Less Prior Payment(s) (5,000.00) |
| Total Recoverable Depreciation 31,802.27 | Net Claim Remaining $175,513.81 |
| Net Claim if Depreciation is Recovered $233,670.93 | Total Recoverable Depreciation 23,997.55 |
| | Net Claim Remaining if Depreciation is Recovered $199,511.36 |

**{SIGNATURES ON NEXT PAGE}**

12

Respectfully submitted:

**HOFFOSS DEVALL, LLC**


/s/ Claude Devall
CLAUDE DEVALL (29148)
Email: tclaude@hdinjurylaw.com
J. LEE HOFFOSS, JR. (29254)
Email: lee@hdinjurylaw.com
DONALD W. MCKNIGHT (10042)
Email: don@hdinjurylaw.com
D. COOPER FOURNET (34549)
Email: cooper@hdinjurylaw.com
MAX E. GUTHRIE (32487)
Email: max@hdinjurylaw.com
517 West College Street
Lake Charles, Louisiana 70605
Telephone: (337) 433-2053
Facsimile: (337) 433-2055
COUNSEL FOR PLAINTIFFS,
RUTLEDGE INVESTMENTS, LLC
AND BRADY RUTLEDGE

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 12, 2022, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system.


/s/ Claude Devall
**CLAUDE DEVALL**

13